Undine F. McCaleb et al. v. State of Mississippi.

[50 South. 555.]

Criminal Law and Procedure. *Bail. Code* 1906, § 1466. *Forfeiture. Evidence to connect bond with offense.*

A forfeiture of a bail bond conditioned for the principal obligor's appearance to answer for an "assault with intent to kill," cannot be taken on his failure to appear and answer to an indictment for murder, in the absence of all evidence connecting the bond with the crime charged in the indictment, and is not warranted by Code 1906, § 1466, providing that such a bond shall be valid irrespective of irregularities where the accused was freed from custody upon its execution.

From the circuit court of Claiborne county.
Hon. John N. Bush, Judge.

Mrs. McCaleb and another, appellants, were sureties on the bail bond of one James Harper. A forfeiture was taken on the bond and judgment in favor of the state, appellee, was rendered against them from which they appealed to the supreme court. The facts are fully stated in the opinion of the court, and the statutes invoked by the state are quoted in the dissenting opinion.

*J. McC. Martin,* for appellants.

The indictment against Harper charges him with murder, not assault with intent to kill. There is nothing in the whole record to show that Harper was under indictment for assault with intent to kill. Hence, the question of jurisdiction is raised by plea to jurisdiction. The bond given by appellants was for the appearance of Harper before the circuit court, to answer the state on a charge of assault to kill, without reciting upon whom the assault was made. Before the court could entertain jurisdiction to enter against appellants a judgment *nisi,* or final, it must affirmatively appear that an indictment was pending, charging Harper with assault to kill, either a person named in the bond, as the person so assaulted, or by proper proof that, if a person is not named in bond, upon whom such assault was made, then the bond was intended to hold him to answer such assault upon the person, named in an indictment for assault with intent to kill. There is neither indictment for assault with intent to kill any one, nor is there proof that Harper made an assault upon any one with intent to kill, connecting said bond with the crime. Then, the elements of jurisdiction, on this line are all wanting. Turn now to the actual indictment presented, charging one Harper with murdering one John Haywood. If there were proof that this is the matter for which bond was given; that John Haywood was the man upon whom assault to kill was made; that after appearance bond was given, John Haywood died, and Harper was indicted for murder, instead of assault to kill, and that the two offenses were one and

the same; and that, although the name of the person assaulted
was omitted from the bond, yet, in fact and truth it was the
man, John Haywood, who afterwards died, and for killing
whom Harper is indicted, then by proper recitals, properly set-
ting out the facts, and properly describing the bond, in the
judgment *nisi,* there would be something to maintain jurisdic-
tion. However, there is no indictment, connected by proof or
otherwise, with said bond. Hence, the jurisdiction of the court
is nowhere made to appear. The indictment stands alone,
with no bond forfeited, which was given to insure the presence
of Harper to answer for the murder of John Haywood or any
other person. The sole basis of a judgment *nisi* is that a bond
is in question, which binds the principal to answer the state on
a charge named in the indictment, and which is the charge for
which the persons became surety. It is submitted, then, that
in the existing state of the record the court was without any af-
firmative matter upon which to enter either judgment *nisi,* or
judgment final.

The bond given by appellants recites that it is for the ap-
pearance of Harper before the circuit court to answer the state
of Mississippi, "on a charge of assault to kill." It does not
state upon whom the assault to kill was made. No indict-
ment whatever is presented against Harper for assault to kill
any one. Yet the *scire facias* recites that he was called to an-
swer such charge and that he made default. The indictment
charges murder of one John Haywood. Unquestionably, then,
there is no record upon which to base such forfeiture, or the is-
suance of such *scire facias.*

In following cases, it is held that "the bail is liable for
default only in the event an indictment is found against the
principal for the particular offense set forth in the undertak-
ing." *Gray v. State,* 43 Ala. 41; *People v. Slopper,* 1 Idaho,
158; *Hyde v. Cross,* 25 Or. 543; *State v. Kyle,* 99 Ala. 256;
*Mally v. State,* 3 Tex. App. 202; *Foster v. State,* 27 Tex. 237;
*Duke v. Sane,* 35 Tex. 424; 3 Am. & Eng. Ency. of Law, 712,
713.

"The offense with which the accused stands charged must be stated in the recognizance or bail bond with sufficient clearness to show of what offense he is in fact accused." 3 Am. & Eng. Ency. of Law, 696; *Dean v. State,* 2 Smed. & M. 200.

It is determined that sureties have a right to stand upon the terms of their obligation, and, therefore, if the recognizance is to answer an indictment for one offense, the bail are not liable for the failure of the principal to appear and answer to an indictment for an offense of an entirely different character." *Gray v. State,* 43 Ala. 41.

"*Scire facias* must allege that the accused was released from custody by reason of the giving of the recognizance." 5 Cyc. 143.

*J. B. Stirling,* attorney-general, for appellee.

Harper was bound to answer the indictment of murder under the bond in this case, and having failed to appear and plead to the indictment, judgments *nisi* and final were proper.

The greater crime included the lesser, and the person assaulted having died in the interim between the assault and the convening of the court and the finding of the indictment, the sureties cannot escape liability for failure to produce Harper for the reason that they signed a bond conditioned that he should appear to answer the charge of assault to kill, and afterwards he was indicted for murder. *Smith v. State,* 38 South. 335; 5 Cent. Dig. 213–275; 5 Cyc. 119.

Surely the judgment appealed from was warranted under Code 1906, §§ 1466, 1467.

Mayes, J., delivered the opinion of the court.

This is an appeal from a judgment of the circuit court, making final a judgment *nisi,* formerly taken on an alleged forfeiture on an appearance bond executed by Harper. The facts are as follows: The record here shows that on the 11th day of April, 1905, an affidavit was made against one James Harper before a justice of the peace in district No. 4 of Claiborne

county, charging him with an assault on one John Haywood
with an ax, with intent to kill and murder.   The record of the
justice is made a part of the state's evidence in the trial of this
case, and shows only the above facts.   It contains no judgment
showing that the justice ever had any hearing under this charge
and required the accused to enter into any bond.   The state
next offered proof to show that on the 12th day of April follow-
ing, the sheriff of the county, and not the justice, took and ap-
proved a bond, executed by Harper, with James F. McCaleb
and Undine F. McCaleb as sureties; the bond being offered in
evidence and being for the sum of $1,000, payable to the state,
containing the condition that it is given to secure the appear-
ance of Harper at the next term of the circuit court to answer
the state of Mississippi on a charge of assault with intent to
kill.

It will be noted that nowhere in the bond is it specified that
it was given in pursuance of any judgment of the justice re-
quiring same to be given, nor does the bond state on whom the
assault was committed.   The record does not show anywhere
the authority of the sheriff for holding the prisoner, or by vir-
tue of which he was authorized to take the bond.   It does not
appear that the sheriff had any *mittimus* from the justice.   Of
course, the absence of these things in no way affects the validity
of the bond; but, if they were in the record, they might serve
to identify the bond given with the offense which Harper was
subsequently indicted for, thus showing that the bond was in-
tended to secure the appearance of Harper for some offense in
connection with John Haywood, though the charge at the time
the bond was given for a much lighter offense than that for
which he was subsequently indicted.   In this condition of
affairs, and on the 19th day of June following, the grand jury
indicted Harper for murdering one John Haywood.   Now, it
will be seen that the assault charged in the affidavit in the jus-
tice court is charged to have been committed on John Haywood,
and the indictment subsequently returned charges the murder

of the same party; but there is not a thing to connect the bond taken by the sheriff for the appearance of Harper at the next term of the court to answer the state of Mississippi on a charge of assault with intent with either one of these charges, either as a matter of oral or record proof. In other words, the bond given is in no way identified with the offense charged. If the assault with intent charged at the time the bond was taken resulted in murder not foreseen at the time, of course, the bond remains good to secure the appearance of the party; but it must be shown that the forfeiture taken on the bond was for the default in appearance of the party under the terms of the bond for the offense charged at the time of his release, or for some graver offense resulting from the same act, and not for a wholly different offense. All the proof offered in this case is that which we have quoted; no proof being offered by the state to show, as a matter of fact, that the bond taken was for the identical offense charged in the affidavit, or was the result of the act under which the charge was made.

At the June term, 1905, the defendant and his bondsmen were called, and, the defendant failing to appear, a forfeiture was taken on his bond, and a *scire facias* issued. The *scire facias* recited that "Whereas, James Harper, principal, and James F. and U. F. McCaleb, sureties, entered into bond before the sheriff on the 12th day of April, agreeing to pay the state of Mississippi $1,000, unless Harper, the principal, should appear at the June term, 1905, of the circuit court, and remain from day to day and term to term, until discharged by law, to answer the charge of assault with intent to kill; and, whereas, on the 22d day of June, 1905, at the June term of court, Harper, having been called, came not, but made default, and the sureties, having been duly called to come into court and bring the body of Harper to answer the charge, came not, but also made default: It is thereupon considered by the court that the state have and recover from Harper and his sureties the amount of bond," etc. After forfeiture was taken, and the parties duly summoned into

court by the *scire facias,* they filed pleas in which they set up
the following, viz.: First, a plea of *nul tiel* record, alleging
that the judgment *nisi* was null and void, because there was no
record in the court on which to base the judgment; second,
there is a fatal variance between the *scire facias* and the judg-
ment *nisi,* in that the judgment recites no bond named in the
*scire facias;* and, third, that there is a fatal variance between
the *scire facias* and the bond given, because the tenor of the
bond differs from the recitals in the *scire facias.* All these
pleas were replied to by the district attorney, and the issue thus
joined resulted in a judgment in favor of the state for the sum
of $1,000 against the principal and sureties.

The question in this case is not as to whether this was a valid
bond. If this bond had the effect of releasing Harper from
custody on any charge known to the law, then its validity is
placed beyond question by Code 1906, § 1466, which provides
that: "All bonds, recognizances, or acknowledgments of in-
debtedness, conditioned for the appearance of any party before
any court officer, in any state case or criminal proceeding, which
shall have the effect to free such party from jail or legal cus-
tody of any sort, shall be valid and bind the party and his sure-
ties, according to the condition of such bond, recognizance, or
acknowledgment, whether it was taken by the proper officer or
under circumstances authorized by law or not, or whether the
officer's return identify it or not."

The validity of the bond is one thing, and its identity, when
placed in suit for an alleged breach, with the crime charged
against a principal in default of appearance, is another thing.
Before the conditions of liability under the bond attach, the
failure of the principal to appear in accordance with its terms
must be a failure on the principal's part to appear for trial on
the identical offense he stood charged with, and for which he was
held in custody when the bond released him, or for some lesser
or graver crime resulting from and growing out of the same
criminal act, either not known at the time or not charged in the

affidavit or indictment. Thus, if one be charged with grand larceny, and execute a bond, and obtain a release from custody on that bond, if he be not subsequently indicted for that crime, but for counterfeiting or forgery, the last-named crimes being not connected with and independent of the crime charged for which the bond was given, a forfeiture cannot be taken on the bond for the failure to appear and answer the original charge, when called on the charge of forgery or counterfeiting.

There is no question as to the validity of this bond. If there has been a failure of the party to appear, the bond is just as good today as it was the day it was taken. Still it was necessary for the state to offer some kind of proof, either oral or record, to connect the bond on which forfeiture was taken with the offense for which the party was subsequently indicted, since there was nothing in the face of the bond or in the record which could possibly connect it in any way.

*Reversed and remanded.*

WHITFIELD, C. J., delivered the following dissenting opinion:

One James Harper was arrested and carried before a magistrate court, and put under a bond to appear before the circuit court to answer the charge of "assault to kill," as it is expressed. In the meanwhile, before the grand jury convened, the assaulted person died, and the grand jury, of course, returned an indictment for murder against Harper. The bond in this case was approved April 12, 1905, by C. S. Magee, sheriff, and Harper, of course, released; the bond being returned into court. The affidavit had been made before B. W. Smith, justice of the peace, on April 11, 1905. It will thus be seen that the bond was executed and approved, and the prisoner released, the day after the affidavit was made against the prisoner.

There is no pretense in the record that this bond was not given to secure his release because of the offense charged against him in this same transaction wherein Haywood was killed. There is nothing in the record to suggest any doubt whatever

that this bond was given before the justice of the peace to answer to a charge of what is called an "assault to kill," and no suggestion that he had made an assault upon any other person. The case of *Smith v. State,* 38 South. 335, is directly in point, and squarely decisive of this case. In that case one Smith executed a bond before a justice of the peace; the conditions being to appear at the next term of circuit court to answer the charge of robbery. At the next term of the circuit court he was indicted for grand larceny. He made default, and a judgment *nisi* was rendered against him and his sureties; the judgment *nisi* reciting that he had given a bond to appear and answer the charge of grand larceny. At the next term of the court the sureties on his bond appeared and set up the defense that the bond which they had signed did not obligate Smith to appear and answer an indictment for grand larceny; that consequently the bond recited in the judgment *nisi* was not the same identical bond which they had executed, as shown by the judgment *nisi* itself. This court said: "Sections 1394, 1395, Ann. Code 1892 (same provision in the Code of 1906), were made for just such cases as these two cases. * * * Under these two sections of the Code, the judgment of the court below was correct, and is affirmed."

I cannot see, for the life of me, what more there is in this case. The statute was made to cut off all such technical defenses, whenever the one thing appeared, to wit, that the bond, however informal, had the effect of securing the release of the prisoner. It is perfectly manifest, from this record, that it did secure the release of this man, Harper, and that it was given to secure his appearance to answer for an offense growing out of the very transaction in which Haywood was killed. It is very well to recur to this statute, and set it out in full. What is its language?

"1394. All bonds, recognizances, or acknowledgments of indebtedness, conditioned for the appearance of any party before and court or officer, in any state case or criminal proceeding,

which shall have the effect to free such party from jail or legal custody of any sort, shall be valid and bind the party and his sureties, according to the condition of such bond, recognizance, or acknowledgment, whether it were taken by the proper officer or under circumstances authorized by law or not, or whether the officer's return identify it or not.

"1395. All bonds and recognizances taken in criminal cases, whether they describe the offense actually committed or not, shall have the effect to hold the party bound thereby to answer to such offense as he may have actually committed, and shall be valid for that purpose, until he be discharged by the court."

